FILED & ENTERED

FEB 20 2009

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY penning   DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

In re:

Stephen Law,

                                          Debtor.

Case No: LA-04-10052-TD

Chapter 7

MEMORANDUM DECISION REGARDING
TRUSTEE'S MOTION TO SURCHARGE
DEBTOR'S HOMESTEAD EXEMPTION

Date:        November 5, 2008
Time:        10:30 a.m.
Location:    Courtroom 1345

    Trustee's Renewed Motion to Surcharge Debtor's Homestead Exemption ("Motion") was heard by this court on November 5, 2008 at 10:30 a.m.  Steven T. Gubner appeared on behalf of Alfred H. Siegel, chapter 7 trustee ("Trustee") of the bankruptcy estate of Stephen Law ("Debtor").  Debtor appeared *in pro per*.  All papers have been filed and this matter is now ripe for resolution.

    Having carefully considered the briefs, pleadings, declarations, and exhibits filed in support of, and in opposition to, the Trustee's Motion, and all of the filings in this bankruptcy case and in the

related adversary proceedings on file, I conclude that a surcharge of the Debtor's homestead exemption by $75,000 is proper.  My reasons are as follows.[1]

## Procedural Posture

On December 29, 2006, the Bankruptcy Appellate Panel ("BAP") entered a memorandum of decision reversing my earlier order, entered on May 8, 2006, surcharging Debtor's homestead exemption on Trustee's earlier motion.  The BAP concluded that the surcharge was improper because no extraordinary circumstances had been established justifying the surcharge, and because it appeared to the BAP that "the intent of the trustee was to punish the debtor for his tactics."  The BAP decision left open the possibility of a future order surcharging Debtor's homestead exemption if the order was "supported by specific findings of fact and appropriate conclusions of law . . . including an adequate explanation why any surcharge based on specific damages or expenses incurred by the estate should be reimbursed from the debtor's exemptions."  The Ninth Circuit recently affirmed the BAP's decision. The following comprises my findings of fact and conclusions of law on the Trustee's Renewed Motion.

## Applicable Legal Standard

A court may surcharge a debtor's claimed exemption "when reasonably necessary both to protect the integrity of the bankruptcy process and to ensure that a debtor exempts an amount no greater than what is permitted by the exemption scheme of the Bankruptcy Code." Latman v. Burdette, 366 F.3d 774, 786 (9th Cir. 2004).  Such a surcharge is justified where a debtor's misconduct amounts to a fraud on the court and the debtor's creditors. In re Onubah, 375 B.R. 549, 554 (9th Cir. BAP 2007).  A surcharge must be calculated to compensate the estate for the actual damage inflicted by a debtor's misconduct. Id. at 556.  The remedy of surcharge cannot "be used to shift costs to a debtor who has unsuccessfully, but in good faith . . . challenged the trustee's administration of the estate." Id.

---

[1] To assist the reader in navigating the extensive dockets in this bankruptcy case and its related adversaries, I cite wherever possible to the exhibits (numbered 1 through 54) that are attached to Trustee's Motion and Supplemental Memorandum of Points and Authorities.

Attorneys' fees may be awarded as part of a surcharge if the debtor's conduct causes "the estate to incur unnecessary expenses . . . and without the award the estate would not have been made whole."  Id.

## Summary of My Findings and Conclusions

On January 5, 2004, Debtor filed his chapter 7 petition.  The only significant asset of the bankruptcy estate was Debtor's residence, which was encumbered by two deeds of trust and three judgment liens.  The second deed of trust, supported by a purported $168,000 personal loan from a woman named Lili Lin, has been the subject of a bitter controversy between Debtor and Trustee.  This dispute has consumed nearly five years and hundreds of thousands of dollars in lawyers' time, as documented in the Trustee's lawyers' still pending preliminary fee application, filed on March 10, 2008.  For reasons set forth more fully below, I am persuaded – based on a preponderance of the evidence before me – that the loan was fabricated by Debtor in an attempt to preserve equity in his residence and defeat the collection efforts of his judgment creditors.  In response to Trustee's challenge to (1) the second deed of trust, as asserted primarily by Debtor, with intermittent, questionable, and unpersuasive support purportedly offered by a woman named Lili Lin of China, and (2) Debtor's homestead claim, I conclude that Debtor's assertions concerning the second deed of trust have not been proved by a preponderance of the evidence and that the Trustee's surcharge request has been substantiated by the evidence.

## The Purported Lili Lin Loan

To support his claims concerning the second deed of trust (the "disputed deed of trust"), Debtor asserts that in 1998 he received a loan of $168,000 from a woman named Lili Lin.[2]  During the nearly five years since his bankruptcy filing, Debtor has not produced any persuasive evidence that he actually received such a loan.  Moreover, the evidence he has produced is inconsistent, supporting an inference that no such loan was made.  For instance, at his meeting of creditors, Debtor stated under oath that the

---

[2] Ex. 12, 134: 10–12 (2005).

proceeds of the Lili Lin loan were not deposited in a bank account, but rather were paid directly to his creditors, and that Debtor possessed receipts reflecting this.[3]  Since then, he has never produced receipts reflecting such payments.  He later claimed that the funds were <u>not</u> paid directly to creditors, but were wired into his bank account;[4] but the bank statements he offered in support of this claim do not prove by credible or persuasive admissible evidence that he received such a loan or that any such sum as $168,000 came from a woman named Lili Lin.[5]  These inconsistencies lead me to disbelieve all of Debtor's assertions regarding the disputed deed of trust: It strains credulity to imagine that Debtor would not have a clear recollection of the form in which he received a $168,000 personal loan, or that in the elapsed time of this 2004 bankruptcy case Debtor has been unable to produce persuasive, credible evidence substantiating the loan in response to Trustee's discovery requests, motions, or otherwise.

In June of 1999, a year after the purported loan was made, Debtor executed and had notarized two separate promissory notes,[6] both, apparently, to document the same alleged loan.  Both of the notes were issued, purportedly, in favor of someone named Lili Lin.  One of the notes identified Lili Lin's birth date as November 22, 1947; the other contained no birth date.  Debtor has not provided a credible explanation as to why he prepared and signed two separate promissory notes, one with the obligee's date of birth and one without.[7]  Also in June of 1999, Debtor executed and had notarized a deed of trust in favor of Lili Lin ("the disputed deed of trust"), which was recorded on June 28, 1999.[8]  Attached to the recorded deed was one of the two promissory notes—the one that did not include Lili Lin's birth date.[9]  Significantly, at the time the disputed deed of trust was recorded, an action titled *Cau-Min Li v.*

---

[3] Ex. 43, 588–89 (2004).
[4] Ex. 20, 293: 6–12 (2006).
[5] Ex. 42, 563–64 (2008).
[6] Ex. 42, 570–76 (2008).
[7] Ex. 48, 156–72 (2008).
[8] Ex. 2 (2004).
[9] <u>Id.</u>

*Law* was pending against the Debtor in the Los Angeles Superior Court.[10]  A resulting judgment of

$131,821.74 was entered against Debtor in October of 1999, just four months after the Lili Lin deed was

recorded.[11]  Given the substantial lapse of time between the purported loan and its recordation, it seems

likely that the disputed deed of trust was recorded in anticipation of the impending Li judgment.

A woman named Lili Lin, who lives in Artesia, California, ("Lili Lin of Artesia") was an

acquaintance of Debtor at this time.  In June of 1999, Debtor delivered to Lili Lin of Artesia a copy of

the disputed deed of trust and promissory note.[12]  He did so despite the fact that Lili Lin of Artesia had

never loaned Debtor any money.[13]  Debtor later asked Lili Lin of Artesia to accept a check from him for

$168,000, in satisfaction of the "loan," and to then return the money to him.[14]  Lili Lin of Artesia

refused to do this.[15]

In February 2000, County Records Research received an unsigned letter, purportedly from Lili

Lin of Artesia.[16]  The letter, which Lili Lin of Artesia says she did not send, sought to institute

foreclosure proceedings on Debtor's residence.  Around the same time, Lili Lin of Artesia received the

following documents in the mail: (1) Assignment of Promissory Note Assigning the Promissory Note

from Lili Lin [of Artesia] to Connie Chang; (2) Notice of Default and Election to Sell Under Deed of

Trust; (3) Substitution of Trustee; (4) Declaration of Default and Demand for Sale.[17]  Included with

them was an unsigned note asking her to sign the documents.[18]

---

[10] Li was suing Debtor for malicious prosecution.  Ex. 43, 585 (2004).
[11] Ex. 3 (1999).
[12] Supplemental Request for Judicial Notice in Support of Trustee's Motion to Surcharge Debtor's Homestead Exemption, Ex. 1, 5: 12-17 (2005).
[13] Id. at 5: 7–11.
[14] Id. at 45–46.
[15] Id.
[16] Ex. 45, 19 (2007).
[17] Supplemental Request for Judicial Notice in Support of Trustee's Motion to Surcharge Debtor's Homestead Exemption, Ex. 1, 5: 17–28 (2005).
[18] Id.  at 6: 2–8.

If Lili Lin of Artesia had signed and delivered the documents, as requested, she would have (1) assigned her interest in the promissory note, if any, to Connie Chang, who is Debtor's ex-wife; (2) substituted County Records Research as the trustee under the disputed deed of trust; and (3) authorized County Records Research to foreclose on Debtor's residence.  On or about March 23, 2000, Lili Lin of Artesia received further correspondence from County Records Research repeating the request that she sign the documents.[19]  She did not sign the documents.  These circumstances, as proved by Trustee, strongly suggest to me that Debtor created the lien of the disputed deed of trust on his home in order to protect his equity from a judgment creditor, and then attempted to recover the protected equity via a sham transfer to his ex-wife.[20]

When Debtor filed his bankruptcy petition in 2004, he listed the now disputed deed of trust in favor of Lin's Mortgage & Associates [of Guangzhou, China] in his schedules.  Trustee filed an adversary proceeding asserting fraud against Lili Lin in June of 2004,[21] seeking to avoid and recover the disputed deed of trust.  Shortly thereafter, in his opposition to Trustee's motion for default judgment, Debtor asserted that he had in fact received the $168,000 loan from a different woman named Lili Lin ("Lili Lin of China")—a woman who lives in China and speaks no English.  Lili Lin of China's birthday purportedly is November 22, 1947.[22]  This is the date written on the second promissory note—the note that was not recorded with the disputed deed of trust.  Debtor asserted that Lili Lin of China had not

---

[19] Id.  at 6: 9–13.

[20] Debtor maintains that Lili Lin of Artesia was attempting to hold herself out as the beneficiary under the disputed trust deed in retaliation for a small claim lawsuit he filed against her.  The lawsuit, however, was filed after the attempted foreclosure and Lili Lin of Artesia's rejection of the scheme.  See Ex. 12, 137 (2005) (showing that lawsuit was filed on June 21, 2000).  See also Supplemental Request for Judicial Notice in Support of Trustee's Motion to Surcharge Debtor's Homestead Exemption, Ex. 1, 5: 12–28 (2005) (showing foreclosure attempt began in February of 2000).  In light of this, and upon weighing the credibility of the two witnesses, I find Lili Lin of Artesia's account to be the more credible one.

[21] Adv. No. 04-01969.

[22] Ex. 42, 548 and 553 (2008).

been properly served.  The court entered a default judgment in favor of Trustee on August 31, 2004.

Lili Lin of China, represented in that adversary by attorney Peter Chow, filed a motion to set aside the

default.  The court set aside the default judgment on October 20, 2004.

Subsequently, each Lili Lin responded to the Trustee's adversary complaint.  Lili Lin of China

filed two answers, one by attorney Peter Chow (in 2004) and one *in pro per* (in 2005).[23]  Lili Lin of

Artesia resolved the adversary by entering into a stipulation for entry of judgment with Trustee.  In the

stipulated judgment, Lili Lin of Artesia acknowledged (1) that she had never made a loan to Debtor and

(2) that Debtor had attempted to involve her in a sham foreclosure of the disputed deed of trust.

A judgment on the Lili Lin of Artesia stipulation was entered on May 18, 2005.  On February 17,

2006, over Debtor's opposition, the court entered an order authorizing Trustee to sell the property.[24]

Two days later, in a jointly signed motion, both Debtor and (purportedly) Lili Lin of China moved the

court to reconsider the sale order.[25]  The signature: "Lili Lin" is printed by hand, in English, on the same

page as Debtor's signature.  To the best of my recollection of this lengthy and tortuous record, no

plausible explanation has been furnished as to how Lili Lin of China, who purportedly speaks only

Chinese and is unable to travel to the United States, was able to sign this motion on the same page as

Debtor.  There is no evidence in the record that adequately explains how this may have occurred.

Further, I note that only two days passed between the sale order and the filing of the motion to

reconsider, very little time for Debtor to mail a signature page to China and receive a signed copy in

return.  Given that Lili Lin of China has not visited the United States since this bankruptcy case began,

the most plausible inference is that Debtor signed Lili Lin of China's name himself, or asked someone

else to sign it for him.

---

[23] On the answer filed *in pro per*, Lili Lin of China gave as her address an address in Rowland Heights,
California.  Ex. 11.
[24] Ex. 18 (2006).
[25] Ex. 20 (2006).

The exhibits attached to Debtor's, and purportedly Lili Lin of China's, motion for reconsideration further support an inference that Debtor was attempting to mislead and manipulate the court. The motion contains numerous exhibits meant to demonstrate that Lili Lin of China had an interest in Debtor's home and that she made a loan to Debtor. Exhibit F is the promissory note containing Lili Lin of China's birth date. Debtor asserted that this promissory note had been recorded with the Los Angeles County Recorder's Office as document number 99-1179298.[26] In fact, this version of the promissory note, the "birth date" note, never was recorded; the only recorded promissory note was the one that did not include Lili Lin's birth date. Debtor's protestations that he made an innocent mistake[27] in submitting the false promissory note to the court are unconvincing, given the degree to which this "mistake" advanced his cause. It is much more plausible that Debtor attached false evidence to his sale reconsideration motion in an effort to persuade the court that Lili Lin of China—rather than Lili Lin of Artesia—was the true holder of the lien on his residence, and I so find.

Remarkably, despite her inability to speak English and her frequent lack of representation, Lili Lin of China has managed to file with this court numerous motions, declarations, and appeals in pro per—all written in English, without record of translation. I note that (1) all of Lili Lin of China's filings are written in a style closely resembling Debtor's, (2) she invariably advocates the same positions as Debtor, and (3) she has used Debtor's address and another southern California address as her address for purposes of her filings.[28] While the court cannot say with certainty that Debtor authored, signed, and filed some or all of these papers purportedly filed by Lili Lin of China, this is the most plausible conclusion, given the implausibility on the record before me of Lili Lin of China accomplishing these tasks herself. The totality of the evidence leaves me unpersuaded that Lili Lin of China signed or

---

[26] Ex. 48, 46–62 (2008).
[27] Id.
[28] See, e.g., Ex. 20, Ex. 11.

- 8 -

approved any declaration or pleading purporting to come from her either in this case or any associated

adversary proceeding.

Whatever the explanation, neither Lili Lin of China nor Debtor has produced any credible,

persuasive evidence that the disputed loan was made, despite years' worth of opportunities to do so.

**This utter absence of credible, persuasive evidence, taken in the context of (1) Debtor's**

**demonstrated willingness to deceive this court by filing a false document—that is, the "birth date"**

**promissory note; (2) the myriad suspicious circumstances surrounding the disputed deed of trust**

**and Lili Lin of China's pleadings; (3) the inconsistencies in Debtor's statements regarding the**

**loan proceeds; and (4) the Lili Lin of Artesia "foreclosure" episode, leads me to conclude that no**

**person named Lili Lin ever made a loan to Debtor in exchange for the disputed deed of trust on**

**Debtor's residence.  The preponderance of the evidence clearly shows that the loan was a fiction,**

**meant to preserve Debtor's equity in his residence beyond what he was entitled to exempt as a**

**homeowner, and a fraud on his creditors and the court.**

### Administrative Costs Incurred by the Estate

Had Debtor not made up this loan and persisted in his misrepresentations to Trustee and the

court, ample funds would have been available to pay Debtor's creditors and Trustee's costs.  Had the

sale of Debtor's home proceeded in an orderly way, absent the disputes concerning Lili Lin of China's

interest in the property, Debtor almost certainly would have received surplus funds from this bankruptcy

estate in excess of his claimed homestead exemption.  As a result of the dispute over the disputed deed

of trust, however, Trustee has incurred more than $500,000 in attorneys' fees,[29] and it is unlikely that

any funds will be available for creditors.  The court has not yet decided whether it is appropriate to

award Trustee all of the attorneys' fees he has requested.  **Nevertheless, I find that the reasonable**

---

[29] First Interim Fee Application, filed on March 10, 2008.

**costs of coping with Debtor's deception far exceed $75,000, the exemption to which Debtor otherwise would be entitled.** Trustee's efforts to sell Debtor's residence alone required 317.50 hours, translating to $87,939 in requested attorneys' fees.[30] Trustee also spent 1,534.70 hours on fraud litigation concerning the Debtor and Lili Lin of China and in achieving, implementing, and defending the compromise with Lili Lin of Artesia against the Debtor's and Lili Lin of China's numerous unsuccessful appeals, translating to $456,112.50 in fees.[31] These costs, which greatly exceed $75,000, are a direct result of Debtor's active misrepresentations to Trustee and the court.

### Lili Lin of China's Claim

In its December 29, 2006 decision, the BAP noted that "if the trustee continues to contest the lien status of Lili Lin of China, it is incumbent upon the trustee to obtain an appropriate judicial

---

[30] Id. at 10–11.

[31] Id. at 13–16. The following appeals had to be defended by Trustee as a direct result of Debtor's false representations: BAP No. 05-1303 – By Lili Lin [of China] of the Order Granting Compromise of Controversy Approving the Stipulated Judgment to Avoid and Recover the Comfort Lien. [Notice of Appeal filed July 18, 2005, Docket No. 56, adversary proceeding no. 2:04-ap-01969-TD.] BAP No. 05-1344 – By the Debtor of the Order Granting Turnover of Property [Notice of Appeal, bankruptcy case Docket No. 87.] BAP No. 06-1195 – By the Debtor of the Order granting the Sale Motion. [Notice of Appeal, bankruptcy case Docket No. 130, and BAP Assignment of Case, bankruptcy case Docket No. 137.] BAP No. 06-1379 – By the Debtor of the Order on Trustee's Continued Motion to Sell Real Property Free and Clear of Liens, Interests, and Encumbrances. [Notice of Appeal, bankruptcy case Docket No. 168.] BAP No. 06-1427 – By the Debtor and Lili Lin [of China] of the Order Denying Motion for Reconsideration or Alternatively, Stay Pending Appeal on Order Granting Trustee's Motion to Approve Compromise of Controversy Approving the Agreement between the Trustee and creditors of the bankruptcy estate. [Notice of Appeal, bankruptcy case Docket No. 175.] BAP No. 07-1323 filed August 27, 2007 – By Lili Lin [of China] and Debtor of Order Granting Trustees Motion to Strike Lili Lin [of China]'s Answer to Complaint for Declaratory Relief. [Notice of Appeal, Docket No. 38, adversary proceeding no. 2:07-ap-01102-TD.] BAP No. 08-1231 filed September 8, 2008 – By Debtor of the order ordering Debtor to appear at his deposition and produce documents. [Notice of Appeal, bankruptcy case Docket No. 294.] The following appeals were taken: Ninth Circuit No. 07-55194 – By Debtor of the BAP's judgment affirming the bankruptcy court's order striking his answer and granting the trustee's motion for default judgment. Ninth Circuit No. 07-55200 – By Debtor and Lili Lin [of China] of the BAP's order approving a compromise agreement. Ninth Circuit No. 07-55200 – Trustee's cross appeal of the BAP's decision reversing the bankruptcy court's order granting Trustee's surcharge motion. Ninth Circuit No. 07-56239 – By the Debtor of the BAP's order affirming the judgment of the bankruptcy court approving the compromise between Trustee and the judgment creditors and granting the sale motion. On January 14, 2009, the Ninth Circuit affirmed each of the BAP decisions.

determination eliminating her interest." The BAP also noted, in the context of Lili Lin of China's

opposition to Trustee's proposed settlement with Lili Lin of Artesia, that "at oral argument, the trustee

conceded that the rights of Lili Lin of China have not been judicially resolved," and attorney "Andrew

Smyth represented to [the BAP panel] that he now represents Lili Lin of China and will proceed towards

prompt judicial resolution and will accept service of process and other papers on behalf of Lili Lin of

China."[32]

Apparently following the BAP's suggestion, the Trustee filed an adversary against Lili Lin of

China on February 8, 2007. The adversary turned out to be futile and was dismissed on April 22, 2008,

at which point Lili Lin of China still had not been properly served. Smyth, the lawyer who represented

that he would accept service and appear on Lili Lin of China's behalf (and did so), later openly

acknowledged at an August 1, 2007 hearing that (1) he had never met the woman and had

communicated with her only by email,[33] (2) he did not speak Chinese and was unable to procure from

Debtor a phone number for Lili Lin of China, so that he could speak to her through his own translator,[34]

(3) he doubted Lili Lin of China truly was asserting a claim in this case,[35] and (4) he entered his

appearance on her behalf for a nominal sum of money—that is, less than $1,000—[36] apparently at the

---

[32] Andrew Smyth was the second lawyer to purportedly represent Lili Lin of China, after Peter Chow. As noted earlier, Peter Chow represented Lili Lin of China in adversary proceeding 04-01969. He also appeared briefly on Lili Lin of China's behalf in adversary proceeding 07-01102, the recent adversary initiated by Trustee apparently at the BAP's request. Chow went to China in late 2007, and while there he talked briefly to Lili Lin of China; however, shortly after that he declined to represent her or to accept service on her behalf. (It is unclear who paid Chow's fees.) The evidence that Chow submitted on behalf of Lili Lin of China, none of which convincingly demonstrates that a loan was made, is identical to evidence that Debtor and Lili Lin of China submitted with the earlier failed motion to reconsider the sale order. Ex. 42 (2008). The evidence consisted only of documents that were submitted previously by Lili Lin of China and/or her then attorney Andrew Smyth and/or Debtor.

[33] Continued Hearing Re Trustee's Motion for Order Consolidating Adversary Proceedings, 10:30 a.m. August 1, 2007, adversary proceeding 07-01102, 8: 16–25, 9: 4–10.

[34] Id. at 13: 2–20.

[35] Id. at 18: 12–13, 22: 9–11.

[36] Id. at 15: 11–25, 16: 1–13

request of others, perhaps the Debtor and the Debtor's ex-wife, Connie Chang.  In response to my Order

to Show Cause and the Trustee's Motion for Sanctions, Smyth voluntarily withdrew from the adversary,

apparently in recognition of the futility of further efforts on his part to be of assistance—this in spite of

the fact that he had acknowledged to the BAP during oral argument that he would accept service of

process should the Trustee bring an adversary against Lili Lin of China to challenge her claim.

   With Lili Lin of China's appearance thus appearing to be a sham, the Trustee refused to

undertake the burden and expense of properly serving Lili Lin of China in China or otherwise pursue

thorough discovery against her so-called "claim."  The fact remains that Lili Lin of China, in spite of

numerous pleadings and efforts in her name, has never come forth, personally or in credible,

authenticated writings, either to defend against the Trustee's lawsuit or to file or prosecute any

satisfactory claim for relief in the bankruptcy case.

### Conclusion

   I conclude that Debtor's conduct as outlined above was fraudulent toward Debtor's creditors and

the court.  Trustee has expended more than 1,500 hours coping with Debtor's fictitious loan and

fraudulent deed of trust, generating substantial attorneys' fees and depleting the estate.  Were Debtor to

receive his homestead exemption, the financial consequences of Debtor's misconduct would fall most

heavily upon Debtor's creditors, including Trustee and his attorneys.  A surcharge must be levied to

avoid this outcome.  Because the actual costs to the estate far exceed $75,000 (the exemption to which

Debtor otherwise would be entitled), I find that Debtor's homestead must be surcharged in its entirety.

   IT IS SO ORDERED.

  DATED: February 20, 2009

_____
United States Bankruptcy Judge

- 12

# SERVICE LIST FOR ENTERED ORDER

| SERVED ELECTRONICALLY | SERVED BY U.S. MAIL |
|---|---|
| Steven T Gubner     sgubner@ebg-law.com | **Stephen Law**<br>P O Box 93562<br>City of Industry, CA 91715-3562 |
| United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov | **Alfred H Siegel**<br>Siegel, Gottlieb, Mangel & Levine<br>15233 Ventura Blvd., 9th Floor<br>Sherman Oaks, CA 91403-2201 |
| | **Steven Gubner**<br>Ezra Brutzkus Gubner LLP<br>21650 Oxnard St Ste 500<br>Woodland Hills, CA 91367 |